# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| James Reilly Hammond, as Personal Representative for the Estate of James W. Hammond, <br><br> Plaintiff, <br> v. <br><br> United States of America and United States Department of Labor, <br><br> Defendants. | Civil Action No. 1:13-cv-00139-JMC <br><br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiff James Reilly Hammond ("Plaintiff"), as Personal Representative for the Estate of James W. Hammond ("James Hammond"), filed this declaratory judgment action against Defendants United States of America (the "Government") and the United States Department of Labor ("DOL") (collectively "Defendants") seeking a declaration by the court that his father's estate should be awarded $125,000.00 compensation by the DOL under Part E of the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. §§ 7384-7385s-15.  (ECF No. 1.)

On March 19, 2013, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for Failure to State a Claim for which Relief May Be Granted, pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 8.)  The court denied both motions on March 27, 2014.[1]  (ECF No. 15.)  Thereafter, Plaintiff filed a Memorandum of Law in Support of Declaratory Relief.  (ECF No. 30.)  Defendants filed a Brief in Response.

---

[1] In denying Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, the court stated that "[a]ccepting as true these well-pleaded allegations and viewing the complaint in a light most favorable to Plaintiff, the court finds that Plaintiff has *sufficiently alleged* that Defendants' failure to pay Part E benefits was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  (ECF No. 15 at 13 (emphasis supplied).)

(ECF No. 35.)  Plaintiff filed a Reply Memorandum (ECF No. 37) and Defendants filed a Sur-Reply (ECF No. 38).  On August 26, 2015, the court held a hearing.  (ECF Nos. 43, 45.)

After considering all of the evidence and arguments of counsel, the court makes the following findings of fact and conclusions of law:

## I.     FINDINGS OF FACT

Unless stated otherwise, the parties have stipulated to the following recitation of facts:

1.     Plaintiff is the son of James Hammond.  James Hammond and his wife, Ida W. Hammond ("Ida Hammond"), both worked at the Savannah River Site.  Ida Hammond developed bladder cancer.  On January 4, 2012, she filed a Form EE-1 Claim for benefits under the EEOICPA for her bladder cancer condition.  Ida Hammond died on March 25, 2012.  On April 6, 2012, James Hammond filed a claim for survivor benefits under the EEOICPA.

2.     The DOL knew that James Hammond was terminal and had acknowledged that it would need to "expedite processing" of his file.[2]

3.     On or around April 25, 2012, the DOL issued a Notice of Recommended Decision awarding James Hammond $150,000.00 in benefits under Part B of the EEOICPA and $125,000.00 in benefits under Part E.  The total award was $275,000.00.

4.     James Hammond signed a waiver on April 25, 2012, waiving his right to object to the April 25, 2012 Notice of Recommended Decision.  Accordingly, on April 26, 2012, the DOL issued its Notice of Final Decision.  Thereafter, the DOL instructed James Hammond to submit an Acceptance of Payment Form "EN-20" with an original signature in order to receive

---

[2] (See ECF No. 31 at 35-36 (indicating that on April 20, 2012, the DOL expedited the adjudication process for James Hammond's claim because of his terminal status).)  Ida Hammond's administrative record indicates that this decision was based on a medical report dated April 17, 2012, and an email communication dated April 20, 2012.  (Id. at 35-36, 168 (indicating that the DOL was on notice that James Hammond had a life expectancy of less than six months).)

payments of the awarded benefits.

5.  On April 26, 2012, the DOL issued an incorrect EN-20 identifying the wrong amount of benefits on it. When Plaintiff noticed the incorrect amount, he notified the DOL and was informed that it was a scrivener's error. Because of the error, the DOL issued a new EN-20, which resulted in a delay in finalizing the claim. James Hammond signed the corrected EN-20 and submitted it to the DOL's Resource Center on Friday, April 27, 2012.

6.  Plaintiff communicated with representatives of the DOL, who informed him that the transfer of funds would occur on April 27, 2012. On the same day, Plaintiff received information that the DOL was having a "hard time" getting the funds sent to his father's bank.[3] A representative of the DOL apologized to Plaintiff and asked whether James Hammond would live until Monday, April 30, 2012, when the funds would be sent without a problem.

7.  On Monday, April 30, 2012 at approximately 9:00 a.m., James Hammond passed away from terminal cancer. Plaintiff notified the DOL on that same day. A representative of the DOL informed Plaintiff that the DOL would not transfer the funds for the Part E benefits. This action arises from the DOL's refusal to pay benefits under Part E of the EEOICPA.[4]

## II.    CONCLUSIONS OF LAW

1.  Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §

---

[3] In Plaintiff's Reply Memorandum, he indicates that DOL "sent/delivered payment via a payment order, either electronically or orally, to the receiving bank on Friday, April 27, 2012." (ECF No. 37 at 8; but see ECF No. 38 at 3-4 n.1 (stating that DOL has not agreed that such a payment order occurred, but agreeing that a DOL representative informed James Hammond that the transfer of funds would occur on that date).)

[4] As Defendants' Motion to Dismiss indicated: "Although [Plaintiff's] father . . . did not receive payment of the $150,000.00 Part B award before his death, [Plaintiff] himself is eligible to receive those benefits as a surviving child of Ida Hammond." (ECF No. 8 at 7 n.7.)

2201(a). The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

2.      Under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), a reviewing court may set aside an agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Defenders of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 393 (4th Cir. 2014) (quoting § 706(2)(A)). The scope of a court's review under this standard is narrow and highly deferential. See AES Sparrows Point LNG v. Wilson, 589 F.3d 721, 733 (4th Cir. 2009) (citation omitted). "[T]he court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made." Id. (citation omitted).

3.      The EEOICPA establishes a compensation program that provides benefits to certain employees who suffer from illnesses related to their exposure to beryllium and radiation in connection with the performance of their work for the United States Department of Energy ("DOE"). See 42 U.S.C. §§ 7384(a)(8), 7384d(b). The EEOICPA was intended "to provide for

4

timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors." 42 U.S.C. § 7384d. The DOL is designated as the administrating agency of the program. See Exec. Order No. 13,179; 65 Fed. Reg. 77487 (Dec. 7, 2000).

4.     Covered employees under Part B of the EEOICPA include those with specified types of cancer who contracted their illnesses after beginning employment at a DOE facility. See 42 U.S.C. § 7384l(9), (17). A covered employee receives compensation in the amount of a $150,000.00 lump-sum payment, plus medical benefits. 42 U.S.C. § 7384s(a)-(b). Part E of the EEOICPA provides additional compensation to certain DOE contractor employees or their eligible survivors for permanent impairment and/or wage loss due to a covered illness resulting from work-related exposure to a toxic substance at a DOE facility. 42 U.S.C. § 7385s.

5.     If an employee is deceased at the time of payment of compensation under Part B or Part E, such compensation may be paid only to the employee's eligible survivor(s), as specified under each Part. Under Part B, payment may be made to a surviving spouse who is living at the time of payment. 42 U.S.C. § 7384s(e)(1)(A). If there is no surviving spouse, payment of compensation may be made in equal shares to all children of the covered employee who are living at the time of payment. § 7384s(e)(1)(B).

6.     Under Part E, payment of compensation may be paid to a covered spouse who is alive at the time of payment. 42 U.S.C. § 7385s-3(c)(1). If there is no such covered spouse, payment is made to all covered children who are alive at the time of payment. § 7385s-3(c)(2). A "covered child" under Part E is a child who, as of the employee's death, was under the age of 18, or under the age of 23 and a full-time student, or any age and incapable of self-support. § 7385s-3(d)(2).

7.      An employee, or the employee's survivor, files a claim for benefits under the EEOICPA with the Office of Workers' Compensation Programs ("OWCP") of the DOL.  20 C.F.R. §§ 30.100(a), 30.101(a).  The claimant must submit medical evidence of the employee's covered illness.  §§ 30.100(c)(2), 30.101(d)(2).  The OWCP issues a recommended decision on a claim and forwards it to the Final Adjudication Branch ("FAB").  20 C.F.R. § 30.300.  A claimant may object to the recommended decision and may request a hearing before the FAB.  Id.  After considering any objections, the FAB issues the agency's final decision, which is then subject to judicial review.  See 20 C.F.R. §§ 30.316, 30.319(d).

8.      At the hearing on August 26, 2015, Plaintiff conceded that his claim for declaratory relief was grounded in equity and not the law.  Plaintiff maintains that equity can enlarge the construction of a statute to further the intent of the legislature and that the Appropriations Clause of the United States Constitution, art. 1, § 9 cl. 7, does not preclude the disbursements of Part E benefits.

   A. Equitable Principles

9.      Plaintiff maintains that the EEOICPA provides the court with an equitable remedy to rectify the unique set of unfortunate circumstances that resulted in James Hammond not receiving Part E compensation.  Specifically, Plaintiff argues that Congress's intent in enacting the EEOICPA was to ensure fairness and equity in compensation.  The EEOICPA states that "[t]o ensure fairness and equity, the civilian men and women who . . . have performed duties . . . related to the Department of Energy . . . should have efficient, uniform, and adequate compensation for . . . health conditions . . . ."  42 U.S.C. § 7384(a)(8); see also § 7384d (indicating that EEOICPA was intended to "provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees").  The

record indicates that the DOL expedited James Hammond's file on April 20, 2015; that the DOL issued a Notice of Final Decision on Thursday, April 26; that the DOL had a "hard time" transferring the funds on Friday, April 27; and that James Hammond passed away on Monday, April 30. At the outset, the court acknowledges that the DOL had an opportunity to make a disbursement while James Hammond was still alive. However, given the timeframe and the absence of deliberate misconduct, the court is unconvinced that the DOL's actions can be characterized as inefficient or untimely. Cf. Richwalder v. U.S. Dep't of Labor, No. 13-cv-325A, 2014 WL 5149701, at *11 (W.D.N.Y. Oct. 14, 2014) (denying a similar claim and suggesting that affirmative or deliberate misconduct by the DOL could affect a court's conclusion).

10.    The court further finds that granting Plaintiff's claim would not align with Congress's intentions, as this Plaintiff is not an intended recipient of Part E benefits. Part E of the EEOICPA:

> [P]rovides for the payment of monetary compensation for the established wage-loss and/or impairment of a covered Part E employee due to a covered illness, and for medical and related benefits for such covered illness. Part E also provides for the payment of monetary compensation for the death (and established wage-loss, where applicable) of a covered Part E employee to specified survivors if the covered Part E employee is deceased at the time of payment.

20 C.F.R. § 30.0(b) (2015) (articulating provisions of Part E). "It is well settled that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Duncan v. Walker, 533 U.S. 167, 173 (2001) (citation omitted). Here, unlike Part B, Part E is limited to children who are minors, students, or incapable of support, and does not provide compensation in equal shares to all children "if the

7

employee is deceased at the time of payment." See Freeman v. U.S. Dep't of Labor, No. 5:14-CV-114-GNS-LLK, 2015 WL 5020697, at *1 (W.D. Ky. Aug. 24, 2015) (distinguishing Part E and Part B compensation); 20 C.F.R. § 30.0(a) (2015) (quoting provisions of Part B); 42 U.S.C. § 7384s(e)(1)(B). Plaintiff does not allege that he is a covered child or incapable of support under the statute. The court observes that the compensation provided for in Part E is more specifically directed at addressing the consequences of wage loss and impairment on a spouse and/or dependent children. See United States v. Houston, No. 2:09-0091, 2011 WL 4899983, at *7 (M.D. Tenn. Oct. 14, 2011) (concluding that the Government was entitled to recover the $125,000.00 payment issued under Part E because the beneficiary's parent was not alive at the time of payment and the beneficiary was not a covered child). Moreover, this court finds compelling Defendants' argument that granting Plaintiff's equitable claim under these unfortunate and unusual circumstances risks establishing a precedential avenue for a surviving spouse's estate to present equitable claims for benefits against those claims of children that the statute actually covers. (See ECF No. 35 at 12 ("Paying an award of survivor compensation under Part E to the estate of a deceased surviving spouse under Part E could result in leaving an individual whom Congress intended to compensate, *i.e.,* a "covered child" as defined in § 7385s-3(d), with less—or even none—of the Part E compensation payable, depending upon how the estate of the deceased employee is disbursed.").) Such legal precedent would certainly frustrate Congress's intentions. Because Plaintiff is not an intended beneficiary of Part E benefits, the court finds that the legislature's intentions will not be furthered through the exercise of equitable remedies to compel disbursement of benefits to him.

11.     Nevertheless, relying on Gromo v. Office of Pers. Mgmt., 944 F.2d 882, 885 (Fed. Cir. 1991), Plaintiff insists that "[w]hen, however, there is a problem such as here created wholly by

8

the Government and for which a ready remedy is available—and that remedy is statutorily conditioned on grounds of equity and good conscience—it ill-behooves the Government to deny its error or to fail to mitigate the harm it caused." (ECF No. 37 at 11 n.7.)

12. The court finds Gromo distinguishable. First, the payment of money from the Federal Treasury is limited to those authorized by statute. See Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 428-29 (1990) (adding that if Congress wished to expand equitable remedies that were not statutorily authorized, it would exercise its power to do so). Here, unlike the relevant statute in Gromo, the EEOICPA does not provide an expressly stated statutory remedy conditioned on grounds of equity. See Gromo, 944 F.2d at 884-85. Second, the court in Richwalder addressed a factually similar issue, where the reason for nonpayment, as in this case, was based on the Government's actions. See Richwalder v. U.S. Dep't of Labor, No. 13-cv-325A, 2014 WL 5149701, at *11 (W.D.N.Y. Oct. 14, 2014). In finding that the plaintiff's complaint was without merit, the court in Richwalder stated: "The Appropriations Clause has consistently been construed as precluding the payment of money on a claim against the government except as authorized by statute." Id. at *11 (quoting Richmond, 496 U.S. at 424). Accordingly, this case is unlike Gromo. This court is more restricted in its invocation of equitable remedies under the EEOICPA, as applied to the unusual factual circumstances in this case.

13. Finally, Plaintiff argued at the hearing that Richwalder was distinguishable because the plaintiff there had not presented the court with an equity argument. Although the court in Richwalder was not presented with an equity argument, this court is unconvinced that an equity argument would have altered that court's ruling. See Richwalder, 2014 WL 5149701, at *11 (acknowledging case law that the equitable doctrine of estoppel cannot grant a money remedy that Congress has not authorized). This court of course acknowledges the very unique and

unfortunate set of circumstances presented here, but ultimately it finds that the legislature's intentions will not be furthered through its exercise of equitable remedies. Therefore, such an exercise of equitable remedies here would be inappropriate.[5]

### B. Appropriations Clause

14.     Plaintiff maintains that the Appropriations Clause does not apply. (ECF No. 30 at 10.) Specifically, Plaintiff argues that the case of Office of Pers. Mgmt. v. Richmond, 496 U.S. 414 (1990) is distinguishable because the funds here were already appropriated for payment by the DOL's final decision to pay the claim and James Hammond signing the EN-20 Form. (Id. at 11 n.9 (citing Indus. Customers of Nw. Utils. v. Bonneville Power Admin., 767 F.3d 912, 923 (9th Cir. 2014) for the proposition that when funds are already appropriated, Appropriation Clause arguments are without merit).) First, the court notes that the Appropriations Clause "precludes the payment of money on a claim against the government except as authorized by statute." Richwalder, 2014 WL 5149701, at *11 (citing Richmond, 496 U.S. at 424). Thus, in Richwalder, the court found that the EN-20 Form only instructs a claimant whose claim has been accepted to provide information regarding the manner in which payment is to be received; the completed form, therefore, cannot be construed as an acceptance of payment. Id. at *10. This court finds the same. Moreover, in Bonneville, where the court found that the Appropriations Clause did not obligate the Government to seek refunds for its disbursements, the compensation was funded by a permanent appropriation or revolving fund that gave the Government a wide latitude in spending. See Bonneville, 767 F.3d at 923. Here, under the EEOICPA, there is no vested right to payment. Richwalder, 2014 WL 5149701, at *10 (indicating that according to 30

---

[5] Applying this rationale, a stronger argument in equity, for example, might arise if the Government's actions similar to those in this case resulted in an individual losing a "covered children" designation by reaching the age of majority or ceasing to qualify as a full-time student. That scenario would more directly frustrate the legislature's intentions under the statute, and the exercise of equitable remedies therefore would be more appropriate.

C.F.R. § 30.101(c), there is no vested right to payment under EEOICPA). Accordingly, the court finds that the Appropriations Clause applies and therefore restricts the court from exercising its equitable powers to fashion a remedy.

### III.    CONCLUSION

For the reasons set forth above, Plaintiff's Complaint fails to demonstrate that Defendants' refusal to pay EEOICPA Part E benefits was based on a determination that was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.[6] Moreover, Plaintiff has not demonstrated that equitable remedies should be used to rectify the unique and unfortunate set of circumstances that resulted in the denial of Part E benefits. Therefore, Plaintiff's claim for declaratory relief (ECF No. 1) is **DENIED**.

**IT IS SO ORDERED.**

United States District Judge

October 20, 2015
Columbia, South Carolina

---

[6] Although Plaintiff conceded that his claim for declaratory relief was grounded in equity and not the law, Plaintiff has not demonstrated that the DOL's decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. See Richwalder, 2014 WL 5149701, at *9, *11 (distinguishing the government's negligent actions from arbitrary and capricious actions and granting the government's motion to dismiss for failure to state a claim).